[Crim. No. 6661.   In Bank.   Mar. 9, 1961.]

In re EMERY NEWBERN on Habeas Corpus.

Edward Molkenbuhr, Jr., under appointment by the Supreme Court, for Petitioner.

Roger Arnebergh, City Attorney (Los Angeles), Philip E. Grey, Assistant City Attorney, and William E. Doran, Deputy City Attorney, for Respondent.

WHITE, J.—Emery Newbern petitions for a writ of habeas corpus alleging illegal conditions of detention after sentencing on two counts of intoxication and arrest on a third. Pursuant to the order to show cause petitioner was released on his own recognizance and counsel was thereafter appointed to represent him before this court.

Petitioner was arrested on the 21st day of December, 1958, and again on the 3d day of March, 1959, on charges of intoxication (violation of section 41.27(a) of the Los Angeles Municipal Code), convicted and placed on probation therefor on the condition that he violate no law relating to intoxication. (These cases, respectively Municipal Court, Los Angeles Judicial District, cases No. 018834 and No. 037551, are hereinafter referred to as the December 1958 and March 1959 cases.) On March 31, 1960, probation was revoked for violation of the condition thereof and thereafter two consecutive 180-day sentences were imposed on petitioner. On April 5, 1960, the sentences were vacated on petitioner's motion and he was released on his own recognizance pending further proceedings. On April 8, 1960, petitioner appeared in court in a condition described by the court as "obviously intoxicated." The causes were thereupon continued to April 12, 1960, bail of $500 in each case was set by the court, and petitioner was committed for want thereof. On April 12 the consecutive 180-day sentences were reimposed. A notice of appeal was filed and bail on appeal was set at $500 in each case. Petitioner was held for want thereof.

On April 1, 1960, while still at large, petitioner was again arrested, charged with having been intoxicated and was released on his own recognizance pending trial. (This case,

Municipal Court, Los Angeles Judicial District, case No. 133205, is hereinafter referred to as the April 1960 case.) On April 28 he appeared for trial before the same judge who had sentenced him on the other two cases pending herein. Petitioner moved for a continuance in order to prepare an affidavit supporting a motion to disqualify the judge for prejudice pursuant to section 170 of the Code of Civil Procedure. The continuance was granted but shortly thereafter, and after petitioner had been returned to jail in default of bail in the December 1958 and March 1959 cases, the order releasing petitioner on his own recognizance was dissolved by the trial judge and bail was set at $100 pending trial. On the day that petitioner learned that bail had been set at $100 he asked his jailer to be allowed to telephone to a bondsman in order to obtain bail in all three cases but was refused pursuant to a Los Angeles Police Department regulation adopted, he was told, under the "State telephone call law." (Pen. Code, § 851.5.)

Petitioner contends that the bail pending appeal of $500 in the December 1958 and the March 1959 cases is illegally high; that the trial judge lacked jurisdiction to take any further action in the April 1960 case after petitioner was granted a continuance in order to prepare a motion to disqualify the judge and that, therefore, the order setting bail at $100 was void; that in any event the bail of $100 in that case was illegally high and excessive; and that the denial of petitioner's request to be allowed to telephone to a bail bondsman was unlawful and resulted in the deprivation of petitioner's constitutional rights. ■ Habeas corpus is an appropriate procedure in which to raise such questions. (*In re Clark,* 51 Cal.2d 838, 840 [337 P.2d 67]; *In re Petersen,* 51 Cal.2d 177, 181 [331 P.2d 24]; *In re Bartges,* 44 Cal.2d 241, 248 [282 P.2d 47]; *In re Chessman,* 44 Cal.2d 1, 5-6 [279 P.2d 24]; *In re Berman,* 105 Cal.App. 270, 271-273 [287 P. 373]; Pen. Code, §§ 1291, 1490.)

■ Petitioner in the instant cases is constitutionally entitled to enlargement on bail and that bail must not be excessive in amount (Const., art. I, § 6), although primarily discretion as to the amount of bail is vested in the trial court. (*In re Brumback,* 46 Cal.2d 810, 813 [299 P.2d 217].)

■ The absolute right to bail extends to the pendency of an appeal after judgment imposing imprisonment in cases of misdemeanor. (Pen. Code, § 1272, subd. 2.) Thus, Newbern had the constitutional and statutory right to be released on a

reasonable bail as to all charges with which we are here concerned. ▇ The only permissible purpose of such bail, whether before or after conviction, is "practical assurance that defendant will attend upon the court when his presence is required." (*In re Brumback, supra,* 46 Cal.2d 810, 813. See also *In re Petersen, supra,* 51 Cal.2d 177, 181; Pen. Code, § 1273.) To attain that end without at the same time effectively negating what is a constitutional right by a bail excessive in amount the magistrate charged with setting the bail is to consider "the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his appearing at the trial or hearing of the case." (Pen. Code, § 1275.) ▇ Bail may not be used as a punishment of the defendant. (*Sawyer* v. *Barbour,* 142 Cal.App.2d 827, 833 [300 P.2d 187].)

▇ We cannot agree with the petitioner's contention that, in view of the foregoing rules of law, the bail pending appeal in each of the December 1958 and March 1959 cases was illegally high. When petitioner appeared in an obviously intoxicated condition, thereby requiring a postponement of proceedings and a waste of the court's time, it was within the court's province to fix bail in an amount which would not only give "practical assurance that defendant will attend upon the court when his presence is required," but also that he would attend in a state of sobriety such as would permit the court to dispose of the matters then pending. The judge had reasonable cause to believe, in view of petitioner's demonstrated alcoholic proclivities, that he might again become intoxicated and not appear, or appear in an intoxicated condition, unless the bail set was sufficiently large. The court could also properly consider that although petitioner may physically appear, the fact that he was appearing in propria persona would deter proceedings therein to a greater extent than had he been represented by sober counsel. In view of the foregoing we perceive no abuse of the primary discretion vested in the trial judge in fixing bail at $500 in each of the December 1958 and the March 1959 cases. Furthermore, there is no demonstrated abuse of discretion in continuing the bonds in that amount after the 180-day sentences were reimposed, as bail pending appeal. The same conditions prevailed as before sentencing, and in addition petitioner had been convicted and was then facing almost a year in jail.

As stated, the petitioner also contends that in the April 1960 case the fixing of bail pending trial at $100, after first

being released on his own recognizance, was an abuse of discretion. It must be remembered, that bail was set in this case after the petitioner appeared in an intoxicated condition before the same judge in the December 1958 and the March 1959 cases, had later been sentenced, and was then confined for want of bail on appeal in those cases. The factors affecting the probability that the petitioner would appear for trial in a sober condition, if released on bail, would appear to be similar to those already considered in the December 1958 and March 1959 cases. It is not necessary, however, that we determine the propriety of refixing the bail at $100 in the April 1960 case. It appears that the petitioner had pleaded guilty in that case and has been given a suspended sentence. The question of bail pending trial is, therefore, moot, as is also the petitioner's further contention that the trial judge lacked jurisdiction to make the order setting bail.

Petitioner's final contention—that he was improperly denied an opportunity to make a telephone call to a bail bondsman—is of such importance to the administration of justice throughout the state and to the petitioner, that we are persuaded to express our views thereon despite the fact that this question too is moot in that petitioner has since been released by order of this court. When petitioner demanded the right to telephone to a bail bondsman he was refused on the basis of a Los Angeles Police Department regulation which restricts the class of people to whom a prisoner may telephone to his attorney, employer or a relative. That regulation was purportedly adopted under the authority of, and allegedly implements section 851.5 of the Penal Code enacted in 1959, which reads as follows: "(a) Any person arrested has, *immediately after he is booked,* the right to make, at his own expense, in the presence of a public officer or employee, *at least one telephone call* from the police station or other place at which he is booked, completed to the person called, who *may* be his attorney, employer, or a relative.

"(b) Any public officer or employee who deprives an arrested person of the rights granted by this section is guilty of a misdemeanor." (Emphasis added.)

Petitioner claims that this statute gave him the absolute right to make the requested telephone call. Respondents, on the other hand, assert that Newbern is in no position to invoke section 851.5 as any rights created therein extend only to the period "immediately" after booking and that Newbern had been booked in all three cases long before he demanded

the right to make the telephone call here in question. Such contention will not, however, stand up to analysis. If respondents are correct in so construing the statute how long would the period ''immediately'' after booking last? The impact of respondents' position would apparently make the life span of the prisoner's right almost instantaneous. It appears much more reasonable to conclude that the statute means, as its plain language indicates, that the right *arises* immediately after booking, and *lasts* for an indefinite time, until the accused has no more need thereof. The statute contains no indication whatsoever of legislative intent to the contrary. Even given as broad a construction as possible, the right to make a minimum of one telephone call during the entire period of detention, the statute can hardly place an unjust burden upon the state when measured against its possible benefit to the accused.

Reaching, then, the substance of petitioner's claim of right under the statute it appears that section 851.5 cannot be interpreted in as restrictive a fashion regarding the recipients of a prisoner's telephone call as the Los Angeles Police Department regulation purports to do without raising serious constitutional questions. For instance: If a defendant has a constitutional right to bail can he be deprived thereof by the simple expedient of not allowing him to summon a bail agent? Is there such a rational distinction between a defendant without an attorney, employer or family and one able to avail himself of the aid of such people so as to permit the former to be deprived of the right to solicit aid while the latter class of defendants are not? To state another example, a defendant charged with intoxication has the right to the attendance of his own physician in order to make a blood alcohol test. (*In re Newbern*, 175 Cal.App.2d 862, 864 [1 Cal.Rptr. 80].) Could that right also be negated merely by refusing to allow the defendant to summon his physician for such purpose? In sum, it can be seen that many serious problems of due process and equal protection of the law would be raised if we were to hold that the Legislature meant Penal Code, section 851.5, to allow the local authorities to deny an accused the right to telephone to anyone other than an attorney, employer or relative.

Furthermore, the entire tenor of the statute is one of liberality to the accused. For instance, it grants him the right to make *at least one* telephone call, it does not limit the number of calls that he may make if the prison authorities are amenable. Finally, the words of the statute are ''who *may* be

his attorney, etc." rather than "who *must* be." The inference is clear therefrom that the enumeration in the statute is permissive rather than exclusive. It is likely that the Legislature intended to indicate the kind of telephone calls that must be permitted, giving the enumerated people merely as examples of those with whom a prisoner might validly have business.

While a more restrictive interpretation of section 851.5 may not be logically excluded by the language thereof, nevertheless, because of the constitutional problems lurking in such an interpretation it appears to us that the Legislature intended the statute to be construed broadly and permissively rather than narrowly and restrictively. To that end we hold that section 851.5 of the Penal Code extends to petitioner the right to telephone to a class of people which includes a bail bondsman, and that the Los Angeles Police Department regulation of which petitioner herein complains is violative thereof and invalid.

In view of the foregoing we must conclude herein that petitioner was improperly denied the right to call a bail bondsman. But, as stated, there is no relief to which the petitioner is now entitled. There is no sufficient showing in this case that the denial of the right to call a bail bondsman resulted in the denial of a fair trial or prevented the petitioner from obtaining and presenting evidence of his innocence of the charges, as in the case of the denial of the right to call a physician for a blood sample. (*In re Newbern, supra,* 175 Cal. App.2d 862.) Nor are we concerned here with an irregularity in commitment, which requires the setting aside of the complaint. (*People* v. *Elliot,* 54 Cal.2d 498 [6 Cal.Rptr. 753, 354 P.2d 225].) It is manifest, however, that if the mandatory statute (Pen. Code, § 851.5) is to be meaningful, some standard of enforcement is necessary apart from a showing of a continuing prejudice suffered by an accused. The Legislature has provided for this in subdivision (b), as follows: "Any public officer or employee who deprives an arrested person of the rights granted by this section is guilty of a misdemeanor." This, obviously, provides some deterrent to insure compliance with the statute as now interpreted by the courts.

For the reasons stated, the order to show cause is discharged and the petition is denied.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.