[No. B151539. Second Dist., Div. Six. Oct. 15, 2001.]

In re GEORGE CHRISTIE III on Habeas Corpus.

COUNSEL

Richard A. Loftus for Petitioner George Christie III.

Michael D. Bradbury, District Attorney, and Peter D. Kossoris, Deputy District Attorney, for Respondent the People.

## OPINION

**PERREN, J.**— The trial court set bail at 10 times the amount specified in the bail schedule but failed to state specific grounds for its decision. The role of this court in reviewing a bail setting is to determine whether the trial court abused its discretion. (*Ex parte Duncan* (1879) 53 Cal. 410, 411; *Ex parte Hoge* (1874) 48 Cal. 3, 5; *People v. Norman* (1967) 252 Cal.App.2d 381, 398 [60 Cal.Rptr. 609], overruled on other grounds by *McDermott v. Superior Court* (1972) 6 Cal.3d 693, 697 [100 Cal.Rptr. 297, 493 P.2d 1161]; 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 90, p. 290.) Here we are unable to determine if there was an abuse of discretion because the trial court failed to state specific grounds for its decision. We order the matter returned to the trial court for further proceedings in which the trial court's statement of reasons shall "contain more than mere findings of ultimate fact or a recitation of the relevant criteria for release on bail; the statement should clearly articulate the basis for the court's utilization of such criteria." (*In re Pipinos* (1982) 33 Cal.3d 189, 193 [187 Cal.Rptr. 730, 654 P.2d 1257, 28 A.L.R.4th 205].)

### FACTS

Petitioner George Christie III (Christie) is the vice-president of the Ventura chapter of the Hell's Angels Motorcycle Club (the Club). In 1998, various Ventura County law enforcement agencies were conducting an extensive investigation involving the Club and the distribution of controlled substances on and near high school campuses. The police conducted a search of Christie's mother's home and seized a number of envelopes which contained cash. Christie's fingerprints were found on one of the envelopes and on some cash. The police also found a quantity of Vicodin tablets that are alleged to have been stolen from the United States Air Force. No charges were filed against Christie at that time.

The Ventura County District Attorney sought indictments against Christie and others alleged to have participated in a conspiracy to distribute controlled substances. Much of the testimony presented before the 2000 Ventura County Grand Jury was from informants who testified that Christie was heavily involved with the illegal trafficking of Vicodin, and that the sale of this drug was aimed at high school students.

On February 26, 2001, Christie and his father (the Club's president), his mother, and other members of the Club were indicted for sales of controlled substances and conspiracy. The offenses alleged against Christie, if proven, could result in a prison sentence of over 25 years.

Christie was arrested and his bail set at $1 million. He moved to have his bail reduced to $100,000, the amount specified in the Ventura County bail schedule. Christie pointed out that he had lived in the City of Ventura his entire life and had no criminal record. (Pen. Code, § 1275.)[1] The People argued that Christie is a high-level participant in a major drug ring engaged in selling illegal drugs to local high school students and that the safety of the community will be imperiled if bail is reduced and he is released. The deputy district attorney reminded the trial court, "[Y]ou have to look at who [Christie] is," an apparent allusion to Christie's father being the Club's president as well as an alleged coconspirator.

Following a brief hearing, the trial court denied the motion, left the bail at $1 million and, in doing so, stated: "As I've tried to do, I try to look at each case separately and not lump everybody together. And I also use the matrix to assist the Court to try to keep itself straight as far as basically who—what we're looking at and specifically what defendants are facing. There's no question, at least, in this Court's mind, based over the numerous bail hearings I've had and the numerous paperwork I've had to read, that George Christie, III, is high up the ladder as far as the allegations that I have to assume to be true, that is, the criminal conspiracy. [¶] And, as I've said before, the thing that raises the Court's primary concern is that minors were targeted, and that's the thing that elevates and has consistently allowed this Court in exercising its discretion is to go beyond the bail schedule because I'm satisfied that there's a threat to the minors of our community."

Christie petitioned this court for writ of habeas corpus alleging that his bail is excessive. He contends that the amount specified in the Ventura County bail schedule for the crimes charged is $100,000 and because his trial may not occur until 2003, his inability to post $1 million bail will result in a lengthy period of pretrial incarceration. We issued an order to show cause.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

## DISCUSSION

■ "The nature of the offense charged, not the punishment actually faced, controls the availability of bail." (*In re Bright* (1993) 13 Cal.App.4th 1664, 1671 [17 Cal.Rptr.2d 105], italics omitted.) Although article I, section 12 of the California Constitution permits preventive detention, there is no contention that the instant matter qualifies.[2] For all other offenses, bail is a matter of right. (Cal. Const., art. I, § 12; Pen. Code, § 1271 [bail before conviction is a matter of right]; *Ex parte Newbern* (1961) 55 Cal.2d 500 [11 Cal.Rptr. 547, 360 P.2d 43].) ■ We are asked, therefore, to determine if a sum of bail 10 times the presumptive amount specified in the bail schedule is excessive. (Pen. Code, § 1269b, subd. (c).) Because the record made by the trial court is inadequate, we are unable to perform our task.

"Just as a theater critic must see the play before writing a review, judges must carefully consider the evidence before deciding a case. The lifeblood of our judicial institutions depends upon judges rendering decisions that are the product of a reasoned and objective view of the law and the facts." (*Rose v. Superior Court* (2000) 81 Cal.App.4th 564, 572 [96 Cal.Rptr.2d 843].)

Here, it was incumbent upon the trial court to state what its considerations were in setting bail in excess of the bail schedule, and to set bail that reflected the court's conclusion. But, whatever its conclusion, the court may neither deny bail nor set it in a sum that is the functional equivalent of no bail.

Over a quarter-century ago, our Supreme Court held that a party denied bail pending appeal must be provided with a statement of explicit reasons for the trial court's ruling. (*In re Podesto* (1976) 15 Cal.3d 921, 937-938 [127 Cal.Rptr. 97, 544 P.2d 1297].) Such findings "help to assure a realistic review by providing a method of evaluating a judge's decision or order; they guard against careless decision making by encouraging the trial judge to express the grounds for his decision; and they preserve public confidence in the fairness of the judicial process. [Citations.]" (*In re John H.* (1978) 21 Cal.3d 18, 23 [145 Cal.Rptr. 357, 577 P.2d 177]; *In re Podesto, supra,* 15 Cal.3d at p. 937.) The rules governing the setting of bail pending trial must be at least as rigorous as those governing the setting of bail on appeal.

---

[2](Cal. Const., art. I, § 12, subds. (a)-(c); Pen. Code, § 1270.5; *Clark v. Superior Court* (1992) 11 Cal.App.4th 455, 457-459 [14 Cal.Rptr.2d 49]; *In re Nordin* (1983) 143 Cal.App.3d 538 [192 Cal.Rptr. 38].)

In the typical case, the trial court sets bail following a hearing in which the respective parties have an opportunity to fully present their positions. Defendant is present, as is counsel. Also present may be those impacted by the court's determination of reasonable bail. This is where the decision is to be made, but it is a decision that must be subject to meaningful review. It is incumbent upon the trial court to clearly state the facts upon which the decision is based. When properly made, courts of review will give great deference to findings of the trial court.

Here, however, the trial court neglected to refer to any operative facts and solely invoked conclusions. It made but a vague reference to its knowledge of the record and simply concluded that Christie, if released, posed a danger to the youth of the community. The trial court made no mention of the probability that Christie would appear at further proceedings. (§ 1275, subd. (a).)

At the hearing, the court mentioned that it viewed each bail motion independently, had conducted "numerous bail hearings" in this matter and was very familiar with the charges levied against Christie. This summary statement is insufficient. The trial judge must state the pertinent facts.[3] But these conclusory statements do not reveal what factors the trial court considered. (*In re Pipinos, supra*, 33 Cal.3d at pp. 200-201; *In re William M.* (1970) 3 Cal.3d 16, 31 [89 Cal.Rptr. 33, 473 P.2d 737] ["mechanized, mass treatment" in juvenile detention hearings "violates our deep conviction that each individual should personally obtain the protection of due process of law"].) We do not know, for example, whether the setting of the high bail is premised upon Christie's position as vice-president of the Club or whether it is based upon alleged acts of past criminal conduct as predictors of his future conduct, or whether the court might have considered some other factors.

CONCLUSION

Here we cannot ascertain whether the court properly exercised its discretion when it set bail. The matter is ordered remanded to the superior court for further proceedings in conformance with the views expressed in this

---

[3]The trial court's statement of reasons in *Podesto* were deemed to be inadequate. (*In re Podesto, supra*, 15 Cal.3d at p. 929, fn. 3; see also *In re Pipinos, supra*, 33 Cal.3d at p. 194, fn. 4.)

opinion. In so ordering, we express no opinion concerning the specific sum that would constitute reasonable bail. The order to show cause, having served its purpose, is discharged.

Gilbert, P. J., and Coffee, J., concurred.

On November 13, 2001, the opinion was modified to read as printed above.